Wendi HECHIMOVICH, Plaintiff-Appellant,

v.

ACUITY, A MUTUAL INSURANCE COMPANY and
Joseph C. Westra, Defendants-Respondents.

Court of Appeals

*No. 2013AP1011. Submitted on briefs October 7, 2013.
—Decided December 27, 2013.*

2014 WI App 14

(Also reported in 842 N.W.2d 493.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Kenneth J. Quincey* and

*Katherine Koepsell* of *Quincey, Becker, Schuessler, Chase & Devitt, S.C.*, Beaver Dam.

On behalf of the defendant-respondent Acuity, a Mutual Insurance Company, the cause was submitted on the brief of *Julius W. Gernes* and *Erica A. Weber* of *Donna Law Firm, P.C.*, Minneapolis, MN.

Before Blanchard, P.J., Sherman and Kloppenburg, JJ.

¶ 1. KLOPPENBURG, J. This case calls on the court to construe and apply Wisconsin's financial responsibility law, WIS. STAT. ch. 344,[1] to an insurance policy that was issued in conformity with that law. The parties dispute whether the policy here, issued by Acuity to Joseph Westra, provides coverage for the injuries that Wendi Hechimovich sustained in a motorcycle accident involving Westra. Hechimovich filed a claim to recover the policy's liability limits, and Acuity denied coverage based on its interpretation of WIS. STAT. § 344.33(9). Hechimovich then filed this action for a declaratory judgment that Westra's Acuity policy provided coverage for her claim. On summary judgment, the circuit court agreed with Acuity's interpretation of § 344.33(9) and concluded that Acuity was not required to provide coverage. The circuit court denied Hechimovich's motion for reconsideration, and Hechimovich appeals. We conclude that Acuity is required to provide coverage based on our interpretation of § 344.33(9). Accordingly, we reverse the circuit court's orders and remand the case for entry of summary judgment in favor of Hechimovich as to her claim for coverage.

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

## BACKGROUND

¶ 2. The relevant facts are undisputed. In July 2011, Hechimovich was a passenger on a motorcycle that Westra was operating. Westra did not own the motorcycle, but he was operating it with the permission of the owner. The motorcycle collided with a truck, and Hechimovich suffered physical injuries as a result.

¶ 3. To date, Hechimovich has recovered the policy limits of the following policies: $50,000 from the motorcycle owner's insurance policy; $150,000 from the truck driver's insurance policy; $100,000 from Hechimovich's uninsured motorist policy; and $100,000 from Westra's State Farm insurance policy. Her total recovery is less than her medical and hospital expenses, which exceed $700,000.

¶ 4. On the date of the accident, Westra was also insured under a liability policy issued by Acuity. Westra's Acuity policy provided $50,000 of coverage for bodily injury to each person. Westra's Acuity policy was issued pursuant to Wis. Stat. §§ 344.31 and 344.33, which are part of Wisconsin's financial responsibility law. Upon issuing the policy to Westra, Acuity completed a Financial Responsibility Certificate and filed the Certificate with the Wisconsin Department of Transportation, which allowed Westra to remain or become a licensed driver.

¶ 5. Hechimovich filed a demand to recover the liability limits of Westra's Acuity policy. Acuity denied coverage. Subsequently, Hechimovich filed this action for a declaratory judgment requiring Acuity to pay Hechimovich the liability limits of $50,000. The parties filed cross-motions for summary judgment. The circuit court granted summary judgment in favor of Acuity, concluding that "as long as the policy requirements of

[the financial responsibility law] are met[,] statutory compliance is achieved," in that coverage above the $50,000 required by the law was paid "by State Farm and therefore the proclaimed objectives of that law have been met."

## DISCUSSION

*Wisconsin's Financial Responsibility Law*

¶ 6. Wisconsin's financial responsibility law relating to vehicles is codified at WIS. STAT. ch. 344, and comprises six subchapters. The subchapter relevant to this appeal is entitled, "Proof of Financial Responsibility for the Future," and its purpose is "to provide a method of compensating [third parties] for damages that may result from future accidents caused by [the] negligence of [an] operator with a poor driving record." *Cardinal v. Leader Nat. Ins. Co.*, 166 Wis. 2d 375, 390, 480 N.W.2d 1 (1992). Under this subchapter, " 'drivers whose licenses have been revoked because of their poor driving records are required to show proof of financial responsibility to have their operators licenses reinstated.' " *Beerbohm v. State Farm Mut. Auto. Ins. Co.*, 2000 WI App 105, ¶ 12, 235 Wis. 2d 182, 612 N.W.2d 338 (quoted source omitted). "Drivers can meet this requirement by providing certification that they have obtained liability insurance that meets the requirements of § 344.33." *Id.*

¶ 7. Under WIS. STAT. § 344.33, a policy issued for the purpose of complying with the financial responsibility law must "insure the person named therein using any motor vehicle with the express or implied permission of the owner." WIS. STAT. § 344.33(2). Additionally, under the version of ch. 344 in effect when Hechimovich was

518

injured, the policy was required to provide $50,000 of coverage for the bodily injury to or death of one person in any one accident. *See* WIS. STAT. § 344.01(2)(am)2. (2009–10).

¶ 8. Under WIS. STAT. § 344.33(9), "[t]he requirements for a motor vehicle liability policy may be fulfilled by the policies of one or more insurers which policies together meet such requirements." A " 'motor vehicle liability policy' means a motor vehicle policy of liability insurance, certified as provided in s. 344.31 as proof of financial responsibility for the future." WIS. STAT. § 344.33(1).

### Acuity's Insurance Policy

¶ 9. After issuing the policy at issue in this appeal, Acuity filed with the Wisconsin Department of Transportation a "financial responsibility certificate" certifying that the policy had been issued "as required by the financial responsibility laws of this State." The parties refer in their arguments to three provisions in that certified policy. First, the certified policy provides, "When [Acuity] certif[ies] this policy as proof under a financial responsibility law, it will comply with the law to the extent of the coverage and limits of liability required by law." Second, the certified policy provides, "insurance afforded . . . for a vehicle [Westra] do[es] not own is excess over any other collectible auto liability insurance." Finally, the certified policy contains an exclusion: "This coverage does not apply to bodily injury to a person . . . [o]ccupying a motorized vehicle with less than four wheels."

### Standards of Review

¶ 10. It is well established that we review a grant of summary judgment *de novo,* employing the same

methodology as the circuit court. *Palisades Collection LLC v. Kalal*, 2010 WI App 38, ¶ 9, 324 Wis. 2d 180, 781 N.W.2d 503. A party is entitled to summary judgment if there is no genuine issue of material fact and that party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2).

¶ 11. The parties agree that there is no genuine issue of material fact in this case. Acuity asks us to affirm the circuit court's grant of summary judgment in its favor because the circuit court properly interpreted WIS. STAT. § 344.33(9) and found that Acuity was not required to provide coverage to Hechimovich under Westra's policy. Hechimovich asks us to reverse the circuit court's grant of summary judgment in favor of Acuity. Based on our interpretation of § 344.33(9), as explained below, we conclude that Hechimovich is entitled to judgment as a matter of law.

¶ 12. The parties agree that this case turns on the proper interpretation of WIS. STAT. § 344.33(9). Statutory interpretation is a question of law that we review *de novo. Juneau Cnty. v. Associated Bank, N.A.*, 2013 WI App 29, ¶ 15, 346 Wis. 2d 264, 828 N.W.2d 262. The purpose of statutory interpretation is to discern the intent of the legislature. *Id.*, ¶ 16. When we interpret a statute, we begin with the statute's plain language, as we assume the legislature's intent is expressed in the words it used. *Id.* In addition, "[w]e interpret statutory language in the context in which it is used, [and] in relation to the language of surrounding or closely-related statutes." *Id.* If this process of interpretation yields a plain meaning, the statute is unambiguous, and we apply its plain meaning. *State v. Harmon*, 2006 WI App 214, ¶ 10, 296 Wis. 2d 861, 723 N.W.2d 732.

*Interpretation of WIS. STAT. § 344.33(9)*

¶ 13. Acuity argues that it is not required to provide coverage to Hechimovich based on its interpretation of WIS. STAT. § 344.33(9). Acuity asserts that, under § 344.33(9), other insurance policies can satisfy the requirements of the financial responsibility law. Specifically, Acuity argues that the $100,000 of coverage provided by Westra's State Farm policy satisfies the financial responsibility law's requirements under § 344.33(9). Therefore, Acuity contends that its policy provisions, and not the requirements of the financial responsibility law, "should apply to govern any arguable additional coverage."

¶ 14. As stated above, the policy provides that, insurance "for a vehicle you do not own is excess over any other collectible auto liability insurance," and excludes coverage for injury or damages "resulting from . . . use of a motorized vehicle with less than four wheels." Tracking these two provisions, Acuity argues that there is an initial grant of coverage under its excess coverage provision because the value of the claims exceeds the payouts from other collectible insurance, but that the Acuity fewer-than-four-wheels exclusion precludes coverage because Westra was operating a motorcycle when the accident occurred.

¶ 15. Acuity's argument may make sense if its policy were not a certified financial responsibility policy. *See Beerbohm*, 235 Wis. 2d 182, ¶ 10 (where policy excluded coverage for damage arising out of the use of any vehicle with fewer than four wheels, a reasonable insured would understand that he or she had not purchased coverage for motorcycles). However, Acuity's policy is a certified financial responsibility policy, and its argument fails because it is premised on an incorrect

interpretation of the financial responsibility law that governs its policy, specifically, Wis. Stat. § 344.33(9).

¶ 16. Acuity asserts that its interpretation of Wis. Stat. § 344.33(9) is based on the "plain language of the legislature." However, Acuity never directly quotes particular language, and only incompletely paraphrases or summarizes the statute. Statutory interpretation begins with the text of the statute itself. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. Accordingly, paraphrasing or summarizing a statute is not an appropriate starting place for statutory interpretation.

¶ 17. The full text of Wis. Stat. § 344.33(9) states: "The requirements for a *motor vehicle liability policy* may be fulfilled by the *policies* of one or more insurers which *policies* together meet such requirements." (Emphasis added.) The phrase "motor vehicle liability policy" is defined by § 344.33(1) as a "policy of liability insurance, *certified as provided in s. 344.31* as proof of financial responsibility for the future." (Emphasis added.) When a term is specifically defined by statute, we apply the definition that the legislature provides. *State v. Fahey*, 2005 WI App 171, ¶ 12, 285 Wis. 2d 679, 702 N.W.2d 400.

¶ 18. Applying the definition of "motor vehicle liability policy" in Wis. Stat. § 344.33(1) to § 344.33(9), we interpret the latter subsection to mean that an insured who is required to prove financial responsibility can do so by securing one or more motor vehicle liability policies, so long as: (1) the policies are certified in accordance with § 344.31 as proof of financial responsi-

bility for the future; and, (2) the "policies together" provide at least the minimum coverage required by the financial responsibility law. We conclude that the meaning of § 344.33(9) is plain: the minimum coverage requirements of the financial responsibility law can be satisfied only by one or more *certified* policies.[2]

¶ 19. Our conclusion finds support in the immediately preceding statutory provision, that "[a]ny motor vehicle liability policy may provide for the prorating of the insurance thereunder with other valid and collectible insurance." WIS. STAT. § 344.33(8). By referring to "other valid and collectible insurance" in § 344.33(8), the legislature explicitly permits financial responsibility policies to provide for proration with other insurance coverage, certified or not. However, in the very next provision permitting the fulfillment of the financial responsibility law's requirements by multiple policies, the legislature uses *only* the statutorily defined term "motor vehicle liability policy" along with the phrase "policies . . . [that] meet such requirements," and makes no reference to "other valid and collectible insurance." *See* WIS. STAT. § 344.33(9). The requirements that such "policies" must meet include certification, provision of a certain minimum dollar amount of coverage, and coverage for use of any motor vehicle. *See* WIS. STAT. § 344.33(1) and (2). By using only the term "motor vehicle liability policy" and the phrase "policies . . .

---

[2] In support of its argument "that the mandated coverage can be satisfied by other insurers' policies," Acuity cites authority from other jurisdictions: *Jeffreys v. Snappy Car Rental, Inc.*, 493 S.E.2d 767 (N.C. Ct. App. 1997), and *Shelter Mut. Ins. Co. v. Mid-Century Ins. Co.*, 214 P.3d 489 (Colo. App. 2008). *Jeffreys* and *Shelter* are readily distinguishable because the financial responsibility statutes at issue in those cases are different from Wisconsin's financial responsibility law.

[that] meet [the financial responsibility law's] requirements" in § 344.33(9), the legislature makes explicit that fulfillment of the financial responsibility law's requirements may be effectuated only by certified policies. *See Pawlowski v. American Family Mut. Ins. Co.*, 2009 WI 105, ¶ 22, 322 Wis. 2d 21, 777 N.W.2d 67 ("When the legislature chooses to use two different words, we generally consider each separately and presume that different words have different meanings.").

¶ 20. The parties agree that Acuity certified Westra's policy as proof of financial responsibility in accordance with Wis. Stat. § 344.31. The parties identify no other certified policy issued to Westra. Accordingly, under Wis. Stat. § 344.33(9), the financial responsibility law's minimum coverage requirements are satisfied only by the Acuity policy. In other words, no other certified policy exists to which the Acuity policy may be "excess" as one of multiple policies under § 344.33(9).

■■
¶ 21. As the only certified financial responsibility policy obtained by and issued to Westra, the Acuity policy must fulfill the financial responsibility law's requirements. *Cf., Beerbohm*, 235 Wis. 2d 182, ¶ 13 (requirements of Wis. Stat. § 344.33(2) do not apply to policies not used as proof of financial responsibility). Among other requirements, the policy must "insure the person named therein using *any* motor vehicle." Wis. Stat. § 344.33(2) (emphasis added). This requirement means that Acuity's exclusion for injury or damages "resulting from the . . . use of a motorized vehicle with less than four wheels" cannot apply. *See Bindrim v. B. & J. Ins. Agency*, 190 Wis. 2d 525, 533, 527 N.W.2d 320 (1995) (holding that a financial responsibility policy could not limit coverage to situations where the insured

524

was driving an automobile not owned by him, because the statute required coverage for operation of any vehicle, regardless whether the insured owned it). Therefore, we conclude that Acuity is required to provide coverage to Hechimovich under Westra's policy.[3]

*Reimbursement Under WIS. STAT. § 344.33(7)*

██

¶ 22. Hechimovich asks us to rule that Acuity is not entitled to seek reimbursement from Westra under WIS. STAT. § 344.33(7), which states: "Any motor vehicle liability policy may provide that the insured shall reimburse the insurer for any payment the insurer would not have been obligated to make under the terms of the policy except for the provisions of this section." Acuity argues that this issue is not ripe for adjudication because Acuity has not yet requested reimbursement from Westra.

██

¶ 23. We do not address the reimbursement issue for two reasons. First, this issue is not ripe for adjudication because it is based on hypothetical facts. *See State v. Armstead*, 220 Wis. 2d 626, 631, 583 N.W.2d 444 (Ct. App. 1998) ("If the resolution of a claim depends on hypothetical or future facts, the claim is not ripe for adjudication and will not be addressed by this court."). Second, Hechimovich does not have standing to seek a ruling that Acuity cannot pursue reimbursement from

---

[3] The parties also dispute whether Acuity's policy as interpreted and applied by the circuit court improperly contains a reducing clause. Because our decision on the proper interpretation of WIS. STAT. § 344.33(9) is dispositive, we do not reach this issue. *See Turner v. Taylor*, 2003 WI App 256, ¶ 1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (when a decision on one issue is dispositive, we need not reach other issues raised).

Westra, because Hechimovich does not have a personal stake in the resolution of this issue. *See City of Madison v. Town of Fitchburg*, 112 Wis. 2d 224, 228, 332 N.W.2d 782 (1983) ("In order to have standing to sue, a party must have a personal stake in the outcome of the controversy.").

## CONCLUSION

¶ 24. For the reasons set forth above, we conclude that Acuity is required to provide coverage to Hechimovich under Westra's policy. We therefore reverse the circuit court's orders and remand to the circuit court for entry of judgment in Hechimovich's favor as to her claim for coverage. Separately, we do not address the reimbursement issue.

*By the Court.*—Orders reversed and cause remanded.